IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


IVAN DUANE JACKSON                                              PLAINTIFF

                    v.                    Civil No. 11-2025

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                  DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      Factual and Procedural Background**

Plaintiff, Ivan Duane Jackson, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his DIB and SSI applications on June 27, 2007, alleging an onset date of July 31, 2005, due to herniated discs/back pain, leg pain, and bipolar disorder. Tr. 25, 151-158. At the time of the alleged onset date, Plaintiff was forty years old with an eleventh grade education. Tr. 13, 79, 157. He has past relevant work as a roofing laborer, concrete laborer, drywall hanger, maintenance engineer, and machinist. Tr. 15-24, 44-45, 79, 153-154, 159-168, 181-196, 220, 352.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 86-92, 95-98. At Plaintiff's request, an administrative hearing was held on February 6, 2009. Tr. 9-62. Plaintiff was present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on June 19, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 67-80. Subsequently, the Appeals Council denied Plaintiff's Request for

Review on January 12, 2011, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.  Plaintiff now seeks judicial review of that decision.

## II.   <u>Medical History</u>

In November 2000, Plaintiff injured his back lifting roofing materials.  Tr. 235, 422-442.  An MRI of Plaintiff's lumbar spine, dated December 1, 2000, revealed a broad-based herniated disk at L5-S1 with mild displacement of the left SI nerve root as well as disk desiccation and disk space narrowing.  Tr. 235, 253.  Plaintiff developed low back pain and left-sided radiculopathy and was treated with physical therapy, pain injections, and anti-inflammatory medication, with little improvement.  Tr. 235.  On March 6, 2001, Todd D. Alexander, M.D., performed a L5-S1 microdiskectomy.  Tr. 238, 250-251.  Following successful surgery, Plaintiff reported improvement of his radicular symptoms, but continued to experience back pain and stiffness.  Tr. 238.  Dr. Alexander recommended physical therapy.  Tr. 238-241.  On May 17, 2001, Dr. Alexander noted that Plaintiff would return to work as a roofer on June 4, 2001.  Tr. 240-242.  He placed no restrictions on Plaintiff's physical abilities.  Tr. 242.

After attempting to return to his roofing work, Plaintiff experienced back pain and left leg sciatica.  Tr. 431.  As a result, he received physical therapy at Swedish American Medical Group.  Tr. 422-442. A follow-up MRI, dated June 20, 2001, revealed hemilaminotomies at L4-5 and an annular bulge at L5-S1, with no evidence of recurrent disk herniation.  Tr. 258.

On July 24, 2001, Plaintiff presented to Gregory R. Trost, M.D., a neurologist, with complaints of low back pain and occasional left leg pain.  Tr. 264-265.  Review of Plaintiff's MRI demonstrated some scar tissue surrounding the left S1 nerve root and some recurrent disk herniation to the right side.  Tr. 264.  Dr. Trost determined Plaintiff could have some diskogenic low back pain, but found Plaintiff had not undergone an adequate trial of physical therapy.  Tr. 264-265.  He ordered two months of physical therapy and noted he would consider diskography and a possible anterior

lumbar interbody fusion if Plaintiff's pain did not resolve. Tr. 264. He also instructed Plaintiff to quit smoking. Tr. 264.

At a follow-up appointment in September 2001, Dr. Trost noted that Plaintiff was doing "significantly better" after physical therapy and was no longer an operative consideration. Tr. 266. However, after Plaintiff returned to Dr. Trost with complaints of recurrent low back pain, he underwent a lumbar myelogram on March 13, 2002. Tr. 277. Results did not show any nerve root compromise. Tr. 277. A lumbar diskogram, dated October 24, 2002, revealed a right posterolateral full thickness annular tear. Tr. 278-279. As a result, Dr. Trost determined Plaintiff was a candidate for anterior lumbar fusion at the L5-S1 level. Tr. 283. However, Plaintiff did not undergo additional surgery.

On August 22, 2007, Plaintiff presented to Sparks Medical Center with complaints of mild lumbar pain after heavy lifting. Tr. 326-350. On examination, Plaintiff exhibited tenderness in his left lumbar area. Tr. 333. Range of motion in Plaintiff's extremities was within normal limits and Plaintiff had normal strength, sensation, and reflexes. Tr. 333. X-rays of Plaintiff's lumbar spine, dated September 25, 2007, revealed narrowing of the L5-S1 disk space with sclerosis of the endplates and marked narrowing consistent with chronic disk disease. Tr. 276. Plaintiff was prescribed pain medication and muscle relaxers. Tr. 334. Upon discharge, he was instructed to follow up with a neurosurgeon to discuss the possibility of surgical intervention. Tr. 350.

On September 20, 2007, Plaintiff saw Kathleen M. Kralick, Ph.D., for a consultative mental evaluation. Tr. 351-356. Plaintiff's primary complaint was back pain and a resulting inability to work. Tr. 351. He denied any significant mental symptoms and complained only of adjustment issues associated with his back pain. Tr. 351. He had never received any mental health treatment. Tr. 351. He took hydrocodone for pain control. Tr. 351. He reportedly smoked one pack of cigarettes per day. Tr. 352. Dr. Kralick noted it was unclear if Plaintiff was physically addicted to

his pain medication. Tr. 353. During the interview, Plaintiff walked with a limp and manifested facial grimacing and frequent repositioning. Tr. 353. He rated his pain at an eight out of ten. Tr. 353.

Upon examination, Plaintiff was pleasant, polite, and cooperative, and his mood and affect were normal. Tr. 353. Thought processes were logical, organized, and goal-directed. Tr. 353. No unusual thought content or delusions were observed. Tr. 353. Dr. Kralick estimated Plaintiff's intelligence to fall within the low average range due to frequent inattention. Tr. 353. However, she noted Plaintiff had the capacity for average intelligence and demonstrated adequate processing speed and efficiency. Tr. 353.

Dr. Kralick diagnosed Plaintiff with pain disorder (associated with both psychological factors and general medical condition), Opioid abuse (rule out dependence), and alcohol abuse (allegedly in sustained full remission). Tr. 355. She estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 71-80. Tr. 355. She found no problems with activities of daily living, Plaintiff's ability to communicate, or his ability to process and comprehend instructions. Tr. 355. Dr. Kralick found Plaintiff could perform non-physically demanding tasks where he could reposition himself as needed. Tr. 356. She also found problems with inattentiveness and accuracy, and opined that Plaintiff would not do well on tasks requiring careful attention to detail. Tr. 356. However, she found Plaintiff could perform adequately when able to move around and change his focus. Tr. 356. Dr. Kralick could not rule out malingering due to potential ongoing substance abuse issues and pain perception. Tr. 356.

In a Psychiatric Review Technique Form ("PRTF") dated September 25, 2007, Paul Cherry, Ph.D., determined Plaintiff did not meet or equal the criteria for Listings 12.07 (somatoform disorders) and 12.09 (substance addiction disorders). Tr. 358-371. Dr. Cherry found moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning,

moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  Tr. 368.  In a Mental Residual Functional Capacity Assessment ("RFC"), Dr. Cherry found moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the public, and respond appropriately to changes in the work setting.  Tr. 372-375.  Dr. Cherry found no other significant limitations and determined Plaintiff was capable of performing simple and routine work with limited public contact.  Tr. 372-374.

On November 7, 2007, Plaintiff saw Van Hoang, M.D., for a consultative physical examination.  Tr. 377-383.  Upon examination, Plaintiff had normal range of motion in his cervical spine, lumbar spine, and all extremities.  Tr. 380.  However, he had an abnormal straight leg raise, stiffness in his lumbar spine, and poor gait.  Tr. 380-381.   He had normal reflexes and exhibited no muscle weakness or atrophy.  Tr. 381.  He had difficulty walking on his heels and toes and squatting and arising from a squatting position.  Tr. 381.  All pulses were palpable with the exception of the dorsalis pedis artery.  Tr. 382.  Dr. Hoang assessed Plaintiff with chronic low back pain (status post laminectomy) and bipolar disorder.  Tr. 383.  He found Plaintiff had moderate physical and mental limitations for employment purposes.  Tr. 383.

In a Physical RFC Assessment dated December 7, 2007, a disability specialist reviewed Plaintiff's medical records and determined he could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for a about six hours in an eight-hour workday, and push/pull within those limitations.  Tr. 385-392.  She determined Plaintiff would be limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but had no manipulative, visual, communicative, or environmental

limitations.  Tr. 385-392.

### III.   <u>Applicable Law</u>

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the

claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since July 31, 2005, the alleged onset date. Tr. 72. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease (microdiscectomy) and mood disorder. Tr. 72. At step three, she determined Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 72-73. At step four, the ALJ found Plaintiff could perform less than the full range of light work. Tr. 74-78. Specifically, she found Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit for six hours in an eight-hour workday, and push/pull within those limitations, but could only occasionally climb, balance, stoop, kneel, crouch, or crawl and could never climb ladders, ropes, or scaffolds. Tr. 74-78. She further found that Plaintiff could tolerate no more than moderate exposure to airborne fumes, gases, or pulmonary irritants, must have a sit/stand option, and could not perform work requiring transactional interaction with the public. Tr. 74-78.

Based on these limitations, the ALJ determined Plaintiff could not perform his past relevant work. Tr. 78-79. However, after soliciting vocational expert testimony, she determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Tr. 79-80. Therefore, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any point from July 31, 2005, the alleged onset date, through June 19, 2009, the date of the decision. Tr. 80.

---

[1] After eliciting testimony from a vocational expert, the ALJ determined Plaintiff could perform representative occupations such as hand packager, of which there are 200,000 jobs nationally and 2000 jobs locally, plastics worker, of which there are 81,000 jobs nationally and 1300 jobs locally, and electronics assembler, of which there are 46,000 jobs nationally and 600 jobs locally. Tr. 46-61, 80.

On appeal, Plaintiff contends the ALJ erred by: (1) determining his combined impairments did not meet or equal the requirements of Listing 1.04; (2) improperly determining his RFC; (3) improperly dismissing his subjective complaints; and (4) identifying jobs he is incapable of performing. *See* Pl.'s Br. 8-15.

A. Listings

Plaintiff contends the ALJ erred in finding he did not have an impairment or combination of impairments that met or medically equaled Listing 1.04A (disorders of the spine). *See* Pl.'s Br. 8-9. The burden of proof is on the claimant to establish that his or her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). To meet a listing, an impairment must meet *all* of the specified criteria. *Id.* To equal a listing, a claimant must present medical findings equal in severity to all the criteria for the most similar listed impairment. *Id; Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 1.04A has the following requirements:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Although Plaintiff has degenerative disc disease resulting in marked narrowing and an abnormal straight leg raise, Dr. Hoang found normal range of motion in Plaintiff's spine, normal reflexes, and no sensory abnormalities, muscle weakness, or atrophy. Tr. 380-381. Additionally, emergency room records dated August 22, 2007, revealed normal range of motion, strength, sensation, and reflexes. Tr. 333. The clinical findings Plaintiff refers to

regarding limited range of motion and abnormal reflexes are from 2001 and 2003, well outside the relevant time period.  Tr. 431, 437.  Medical records from Sparks Hospital and Dr. Hoang are within the relevant time period and are therefore more indicative of Plaintiff's condition at that time.  As such, Plaintiff's symptoms do not meet all the specified criteria for listing 1.04A, nor has he established symptoms equal in severity.  *See Boettcher v. Astrue*, 652 F.3d 860, 863-864 (8th Cir. 2011) (claimant did not suffer from the sensory or reflex loss required under subpart A).  Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's back impairment does not meet or medically equal listing 1.04A.

  B.  RFC

  Plaintiff contends the ALJ made an improper RFC assessment concerning his physical and mental impairments.  *See* Pl.'s Br. 11-13.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

  Plaintiff first contends the ALJ's determination that he could perform light work is inconsistent with her finding that Plaintiff would require a sit/stand option.  *See* Pl.'s Br. 12.  Plaintiff cites to SSR 83-12 in support of his argument.  SSR 83-12 (effective Feb. 26, 1979), 1983 WL 31253, at *4 ("Such an individual is not functionally capable of doing either the prolonged

sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."). Contrary to Plaintiff's assertion, SSR 83-12 also states that "in cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.* In this instance, the ALJ specifically questioned the VE regarding light, unskilled jobs that would allow for a sit/stand option. Tr. 56-57; *see Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996) (SSR 83-12 satisfied when vocational expert took into account claimant's need to alternate positions when assessing what jobs she could perform). The VE responded that Plaintiff could perform the following occupations: hand packager, plastics worker, and electronics assembler. Tr. 56-57. As such, the ALJ complied with the requirements of SSR 83-12.

Plaintiff also contends the ALJ erred in failing to request a medical source statement from Dr. Hoang. *See* Pl.'s Br. 12-13. Although SSR 96-5p states that an ALJ is "*generally* required to request that acceptable medical sources provide [medical source statements] with their medical reports," a medical report is not considered incomplete without a medical source statement. SSR 96-5p (effective July 2, 1996), 1996 WL 374183, at *4 (emphasis added); 20 C.F.R. § 404.1513(b)(6). Dr. Hoang's evaluation provided Plaintiff's medical history, clinical and lab findings, a diagnosis, and a notation that Plaintiff had "moderate physical and mental limitations for employment." This information meets the requirements listed in 20 C.F.R. § 404.1513(b). Therefore, the ALJ did not err in failing to obtain a medical source statement from Dr. Hoang.

Finally, Plaintiff argues the ALJ failed to appropriately consider his postural and mental limitations. *See* Pl.'s Br. 13. Plaintiff's allegations concerning his need to lie down during the day, as well as his statements regarding his ability to bend, stoop, and crouch, are self-serving and not supported by the evidence of record.

-10-

With regard to Plaintiff's mental impairments, Dr. Kralick's overall findings were consistent with the ALJ's restriction to unskilled work with no transactional interaction with the public.  Dr. Kralick found Plaintiff's ability to carry out activities of daily living/daily adaptive functioning, communicate and interact in a socially adequate manner, and attend and sustain concentration on basic tasks to be adequate for occupational purposes.  Tr. 355-356.  She found mild to moderate impairment in Plaintiff's ability to cope with the mental/cognitive demands of basic work-like tasks, but noted he could perform work that was not physically demanding, allowed repositioning as needed, and did not require careful attention to detail.  Tr. 356.  She also found a fair ability to persist in completing tasks, but noted a significant impairment in Plaintiff's ability to complete work-like tasks within an acceptable time frame due to difficulties with accuracy and attentiveness.  Tr. 356.  Significantly, Dr. Kralick noted she could not rule out the possibility of malingering/exaggeration of symptoms.  Tr. 356; *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (ALJ may discount a claimant's allegations if there is evidence of malingering or exaggeration of symptoms for financial gain).  Moreover, Plaintiff has no history of mental health treatment, nor has he taken medication for a mental impairment.  *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments).  After considering Dr. Kralick's report in conjunction with Plaintiff's overall lack of treatment and questionable veracity, the court concludes the ALJ properly took into consideration Plaintiff's mental impairments in determining his RFC.

After considering all the relevant evidence, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

-11-

C. <u>Subjective Complaints</u>

Plaintiff contends the ALJ improperly dismissed his subjective allegations of pain. *See* Pl.'s Br. 9-11. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

The ALJ cited the following reasons for questioning Plaintiff's credibility: (1) Plaintiff received treatment (surgery) that was deemed adequate to resolve his herniated disc; (2) Plaintiff was somewhat noncompliant with treatment, as he failed to finish physical therapy; (3) Dr. Kralick could not rule out exaggeration, malingering, and possible downplaying of substance abuse; (4) Plaintiff worked more than he admitted; and (5) although Plaintiff reported numbness and tingling in his arms and hands, he did not report these symptoms to a physician and did not have a back impairment that would reasonably affect his upper extremities. Tr. 74-78. Additionally, the record reflects that Plaintiff engaged in such activities as doing dishes, laundry, shopping for groceries, preparing meals, straightening up, and going to church. Tr. 173, 176, 352, 355; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living); *Haynes v.*

-12-

*Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (activities included walking, caring for livestock, doing laundry, cooking, and shopping).  Moreover, although Plaintiff reported depression, he never received any formal treatment.  *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications.").

Plaintiff responds that he has no insurance and cannot afford regular treatment. *See* Pl.'s Br. 10.  However, he did not seek treatment at any low-cost clinics or charitable organizations in the area, nor has he provided evidence that he was denied medical care due to his financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).  There is also no evidence that Plaintiff attempted to obtain subsidized or free medication through a medication assistance program.  *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted his subjective complaints.  *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence").  For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

D. Hypothetical Question

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect his limitations. *See* Pl.'s Br. 14-15.  However, this section of Plaintiff's brief merely reiterates his RFC argument. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ.  *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)).  Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ.  *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).  The ALJ may properly exclude, as she did in this instance, any alleged

-13-

limitation or impairments she rejects as untrue or unsubstantiated. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). For these reasons, Plaintiff's argument is without merit. Accordingly, substantial evidence supports the ALJ's hypothetical question.

## V.    <u>Conclusion</u>

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's case be dismissed with prejudice. **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 10th day of November 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE